UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIA COCCARO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BARNARD COLLEGE,<br><br>Defendant. | Case No. 1:23-cv-3809<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Julia Coccaro ("Plaintiff"), by and through her undersigned counsel, brings this Class Action Complaint against Defendant, Barnard College ("Barnard" or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Higher education is no different from any other industry in as much as consumers (*i.e.*, students) have the ability to shop between different educational products offered by competitive institutions before ultimately purchasing the product that is right for them.

2. Some colleges and universities offer an educational product without access to a campus or in-person community, while others offer an educational product with access to a varied suite of services, activities, facilities and experiences through an on-campus, in-person educational experience.

3. Barnard offers students an on-campus, in-person educational experience in New York City, New York.

4. Plaintiff, an undergraduate student during the Spring 2020 semester, paid tuition and fees to enroll in Barnard's on-campus, in-person education program, including all the benefits

1

and services associated therewith for the entirety of the semester.

5. Plaintiff's paid-for experience was cut short mid-way through the spring of 2020, when that in-person educational experience was taken away from Plaintiff and other students at Barnard.

6. In March 2020, in response to the outbreak of the SARS-CoV-2 virus, the virus that causes the COVID-19 disease (the "COVID-19 pandemic"), Barnard, like many other universities, transitioned to remote online-only education, canceled athletic and other on-campus recreational events, canceled student activity events, and ordered students to refrain from going on campus.

7. As a result, all on-campus education, services, and amenities were no longer available to Barnard students.

8. Despite the harsh reality that students could no longer enjoy the benefit of the bargain for which they pre-paid, Barnard refused to provide a prorated refund of tuition or fees tied to on-campus education, services, and amenities that were not available to students for a significant part of the Spring 2020 semester.

9. Accordingly, the students have lost the benefits of the bargain for services and the experience they paid for but could no longer access or use.

10. By not giving prorated refunds for tuition or fees charged for on-campus education and services not provided, Barnard breached its contracts with students.

11. It cannot be disputed that the circumstances underlying this legal action are unfortunate and unprecedented. However, the students did not choose these circumstances, and they certainly did not agree to pay tuition and fees for online-only education and services.

12. It is unfair and unlawful for Barnard to retain tuition and fees for campus-based in-person education and services not being provided and to pass the financial losses on to the students.

13. Importantly, Plaintiff does not challenge Defendant's discretion in adhering to federal, state, and local health guidelines, but rather challenges Defendant's decision to retain the tuition and fees, paid by Plaintiff and other students for in-person education, experiences, access to campus, and services, without providing such.

14. Plaintiff brings this class action for damages, restitution, and declaratory relief resulting from Barnard's retention of the tuition and fees paid by Plaintiff and the other putative Class Members for in-person education and services not being provided. Specifically, this lawsuit seeks disgorgement of the prorated, unused amounts of the fees that Plaintiff and other putative Class Members paid, but for which they (or the students on behalf of whom they paid) were not provided the benefit, as well as a partial prorated tuition reimbursement representing the difference in fair market value between the on-campus product for which they had paid, and the online product that they received.

**PARTIES**

15. Plaintiff Julia Coccaro is an adult, who at all relevant times, is a resident and citizen of the State of New York. She paid tuition and fees for the Spring 2020 semester. Halfway through the Spring 2020 semester, Plaintiff was forced to take her classes remotely, restrained from visiting campus, and prevented from utilizing various on-campus services for which she paid.

16. Plaintiff enrolled at Barnard for the Spring 2020 semester, which was scheduled to run from approximately January 21, 2020 through May 14, 2020. Plaintiff did not have access to the campus after March 11, 2020 because the campus was closed due to COVID-19. Plaintiff paid tuition and fees for the Spring 2020 semester, the benefits of which she lost because Barnard closed the campus and cut off access to on-campus services, facilities, and extracurricular activities.

17. Defendant, Barnard College, is a private liberal arts college founded in 1889. Barnard offers numerous major fields for undergraduate students. Defendant's undergraduate programs enroll students from nearly all fifty states, the District of Columbia, several U.S. territories, and dozens of foreign countries. Its principal campus is located in the borough of Manhattan, New York City, New York. Defendant is a citizen of New York.

## JURISDICTION AND VENUE

18. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

19. This Court has personal jurisdiction over Defendant because many of the acts and transactions giving rise to this action occurred in this District, and because Defendant conducts substantial business by operating its principal campus in this District, and solicits students residing in this District to attend its institution.

20. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, specifically, the contracts that are the subject of this action were formed in this District, and the performance and breach of contract also occurred in this District.

## FACTUAL ALLEGATIONS

21. Every Barnard student, including Plaintiff, is required to pay tuition and some form of mandatory fees. The Spring 2020 semester was scheduled to commence on or about January 21, 2020, and end on or around May 14, 2020.[1]

22. Tuition for the Spring 2020 semester was approximately $27,890.50 for full-time undergraduate students.[2]

23. Barnard offers students an in-person and on-campus education, using its marketing materials, course catalogue, and other bulletins to solicit students for its on-campus programs.

24. For example, Bernard's website describes Barnard's on-campus services and facilities and the benefits of personal contacts with faculty and staff. Specifically, Barnard's website describes "Life on Campus:"

> "[t]he Barnard campus is home to a close-knit community of independently minded, adventurous students. As part of the community, you'll be empowered to help steer campus life. You'll find a culture and resources that encourage self-care and care for one another. And a constant stream of lectures, workshops, concerts, recitals, plays, films, and other events will keep you busy."[3]

25. Barnard course catalog likewise repeatedly advertised the benefits of Barnard's close-knit residential community, calling attention in its Mission Statement to "the unparalleled advantages of an outstanding residential college," such as its "community of accessible teachers and engaged students who participate together in intellectual risk-taking and discovery," and promoting Barnard's "unique environment" that helps students "become agile, resilient, responsible, and creative."[4]

---

[1] *Academic Calendar 2019-2020*, Barnard College, https://barnard.edu/sites/default/files/inline-files/Academic%20Calendar%202019-2020.pdf, (last visited May 5, 2023).
[2] https://barnard.edu/bursar/tuition-and-fees.
[3] https://web.archive.org/web/20200107221406/https://barnard.edu/on-campus
[4] Barnard College Bulletin, 2019-2020 at 6, https://catalog.barnard.edu/barnard-college/courses-instruction/archive/Barnard_CourseLeaf_Catalogue_2019-20.pdf (last accessed May 5, 2023).

26. Further, Barnard's course catalogue highlights additional benefits of attending Barnard for an in-person education. For instance, in 2018, Barnard opened the Cheryl and Philip Milstein Center for Teaching and Learning, which Barnard advertises as "a distinctive place that convenes students and faculty, facilitates collaboration, and fosters dialogue."[5] The building "includes a new kind of library, one that brings together current technologies and learning spaces in an interactive setting."[6] Furthermore, the building "is a dynamic academic hub of the campus, linking departments and disciplines both physically and philosophically."[7]

27. Similarly, the website for the Barnard Library explains that the college's library "seek[s] to bring together people, ideas, collections and technologies, forming a space and community that serves as a catalyst for knowledge creation and investigation" by provid[ing] a wide range of research and scholarly services and programming to create a unique and connected undergraduate library."[8]

28. Indeed, the library provides Barnard students spaces for:

    a. **Computing & Printing:** Our computers are loaded with software tools to help you do everything from editing a professional-quality film to generating maps from a giant data set;

    b. **Studying & Collaboration:** From quiet corners for writing essays to collaborative spaces for working through problem sets on whiteboards, the Milstein Center offers spots for a variety of study styles; and

    c. **Relaxing & Self-Care:** Whether you relax by playing a game with your friends at Peet's or borrowing a yoga mat to stretch out on the terrace, we offer resources and spaces designed so you can take a break.[9]

---

[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] https://web.archive.org/web/20200115090110/https://library.barnard.edu/
[9] https://web.archive.org/web/20200107194952/https://library.barnard.edu/spaces

29. Barnard's course catalogue also informs students that classes will be in-person, explaining that Barnard has a "Length of Residence" requirement and that students must complete a certain number of points (credit hours) while "in residence" in order to receive a degree.[10]

30. Moreover, in advertising and soliciting students to attend the college, Barnard advertises its location in New York City as a compelling reason to attend. Barnard touts its location in New York City as part of its academic experience, using its website to advertise that attending Barnard provides "Off-campus, hands-on academic experiences right in the heart of New York City."[11] Barnard's website laud's that Barnard is "Boldly NYC" and that "Barnard is one with the City — its nonstop energy, its diversity, its boundless imagination. This is the perfect place to test possibility."[12]

31. Barnard's website also explains that New York City is a key component of a Barnard education: "[a]t Barnard, New York City is our classroom. With one of the world's most diverse and culturally rich urban environments at our doorstep, we use the city to highlight ideas and test our thinking in the real world."[13] Indeed, "[b]ecause Barnard classes are small and collaborative, it's easy for your professor to schedule a field trip or spontaneously head out to explore. By the end of your first year, you'll be fully immersed in the city you can now call home."[14]

32. Barnard's course catalogue even highlights that:

New York City and its vast cultural and social resources are also an extension of the Barnard campus, literally used by every department to enhance curriculum and learning. The City is an inescapable presence, inviting students with both its

---

[10] https://catalog.barnard.edu/barnard-college/courses-instruction/archive/Barnard_CourseLeaf_Catalogue_2019-20.pdf
[11] https://web.archive.org/web/20200107214228/https://barnard.edu/academic-experience.
[12] https://web.archive.org/web/20200107211929/https://barnard.edu/boldly-barnard
[13] https://web.archive.org/web/20200107214918/https://barnard.edu/academic-experience/education-for-tomorrow/nyc-lab
[14] *Id.*

challenges and infinite opportunities (from dancing with the American Ballet to working with social-change organizations to interning on Wall Street).[15]

33. Specifically, Barnard is located in New York City's Morningside Heights neighborhood, a neighborhood Barnard advertises on its website as an "Academic Acropolis," containing "[e]verything a student might need"[16]

34. Plaintiff and members of the Class paid their tuition in the Spring 2020 semester to enjoy everything Barnard offered them, including the campus location, community, and in-person education.

35. Plaintiff and members of the Class were also required to pay a mandatory fee (the "Mandatory Fee") in the amount of $943.50 for the Spring 2020 semester. The Mandatory Fee provided students access to a multitude of Barnard's on-campus facilities, resources, events, and services, as evidence by the language of many Barnard publications, including but not limited to the 2019-20 Tuition and Fees Bulletin.[17]

36. Barnard's 2019-20 Tuition and Fees Bulletin, lays out what fees are included in the Mandatory Fee. These include the:

    a. Student Health Service Fee;

    b. Class Fee;

    c. Computer Fee;

    d. Student Government Charges;

    e. Access to the facilities at the Dodge Physical Fitness Center; and

    f. Access to the facilities at Lerner Hall at Columbia University.[18]

---

[15] https://catalog.barnard.edu/barnard-college/courses-instruction/archive/Barnard_CourseLeaf_Catalogue_2019-20.pdf
[16] https://web.archive.org/web/20200107220757/https://barnard.edu/neighborhood
[17] https://barnard.edu/bursar/tuition-and-fees
[18] https://web.archive.org/web/20200107232416/https://barnard.edu/bursar/tuition-and-fees

37.     Plaintiff and the members of the Class paid the Mandatory Fee for the Spring 2020 semester so they could benefit from on-campus services and facilities offered by Barnard to students.

38.     Despite Plaintiff and Class Members paying the Spring 2020 semester tuition and Mandatory Fee to attend an in-person educational experience, Barnard failed to provide the promised in-person education for the duration of the entire semester, instead providing online instruction only for 50% percent of the Spring 2020 semester.

**A.    In Response to COVID-19, Barnard Closed Campus, Preventing Access to its Facilities, Services, Housing, and Dining, and Cancelled All In-Person Classes.**

39.     On March 11, 2020, Barnard announced the decision to suspend in-person classes for the rest of the semester, moving to virtual classes only.[19]

40.     On or around March 11, 2020, Barnard cancelled all events and gatherings for the rest of the semester.[20] Barnard limited services available on campus and restricted access to campus buildings.[21]

41.     Barnard asked students on or around the same time to move out of residence halls as soon as possible.[22] Barnard only allowed students with no other housing options to remain in its residence halls.[23]

42.     Barnard adopted a mandatory "Pass/D/Fail" grading policy for Spring 2020, under which faculty were not permitted to assign grades of A, B, or C to differentiate the quality of passing students' work.[24]

---

[19] https://web.archive.org/web/20200319081331mp_/https://alert.barnard.edu/
[20] *Id.*
[21] https://web.archive.org/web/20200409191905/https://alert.barnard.edu/covid-19-student-information
[22] *Id.*
[23] *Id.*
[24] https://web.archive.org/web/20200409192521/https://alert.barnard.edu/news/passfail-policy-details-march-23-2020-students

43. Barnard did not hold any in-person classes for undergraduate students between March 11, 2020 and the end of Spring 2020 term. All Spring 2020 classes after March 11, 2020 were only offered in a remote online format with no in-person instruction or interaction.

44. Most of the services for which the Mandatory Fee was assessed were also terminated, cancelled, or severely curtailed at or about this time, such as access to the health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement.

45. Although Barnard provided prorated refunds for residence hall rooms and student meal plans, Barnard did not provide reimbursement or refund information regarding tuition or the Mandatory Fee.[25] Barnard's termination of in-person classes occurred after the administrative deadline for students to receive any refund of tuition or fees by withdrawing from classes.

**B.  Students Experienced Significant Losses, in Many Cases of Borrowed Funds as a Result of Defendant's Conduct.**

46. At Barnard, the median federal loan debt among borrowers who completed their undergraduate degree is $18,500.[26] The median monthly federal loan payment (if it were repaid over 10 years at 5.05% interest) for student federal loan borrowers who graduated from Barnard is $185.[27]

47. In addition, 2% of graduating students at Barnard took out private loans.[28] Students with private loans had an average of $61,095 in private loan debt at graduation.[29]

---

[25] https://web.archive.org/web/20200409192908/https://alert.barnard.edu/news/finalizing-plans-and-required-forms-march-13-2020-students
[26] https://www.usnews.com/best-colleges/barnard-college-2708/paying
[27] *Id.*
[28] *Id.*
[29] *Id.*

48. With the campus shut down for 50% of the semester, Plaintiff and the proposed Class Members have been deprived of the benefits of the on-campus experience as set forth above. Nevertheless, Barnard has refused to refund any portion of the tuition or the Mandatory Fee, despite not providing the on-campus education, services, facilities, and activities, a completely different product from which they paid, contracted for, and reasonably expected to receive.

49. Plaintiff and the proposed Class Members are entitled to a refund of the money they paid Barnard for promised on-campus education and experience when none was provided. Students could use that money to pay for expenses, to defray the costs of lost services, or, for students who took out loans, to reduce their loan obligations.

50. Barnard has retained the value of the monies paid by Plaintiff and the proposed Class Members for tuition and the Mandatory Fee for the Spring 2020 semester while failing to provide the services for which those monies were paid.

51. Through this lawsuit, Plaintiff seeks, for herself and the other Class Members, Barnard's disgorgement of the tuition and the Mandatory Fee proportionate to the amount of time that remained in the Spring 2020 semester when the campus closed and corresponding campus services were curtailed or ceased being provided.

## CLASS ACTION ALLEGATIONS

52. Plaintiff brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All Barnard students who paid Defendant, directly or indirectly, Spring Semester 2020 tuition and/or Mandatory Fee and enrolled in at least one in-person on-campus class (the "Class")

53. Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals,

servants, partners, joint ventures, or entities controlled by Defendant, and its heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers.

54. Subject to additional information obtained through further investigation and discovery, Plaintiff reserves the right to amend, narrow, or expand the class definition.

55. **Numerosity:** The Class is so numerous that joinder of all members is impracticable. Although the precise number of Class members is unknown to Plaintiff, Barnard reported a total of 2,682 undergraduate students enrolled for the 2019-2020 school year. The names and addresses of all such students are known to Barnard and can be identified through Barnard's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

56. **Commonality:** There are questions of law and fact common to the members of the Class including, without limitation:

> a. Whether Barnard accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus educational experience, as well as certain facilities and services throughout the Spring 2020 semester;
>
> b. Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus educational experience after March 11, 2020;

      c.      Whether Defendant breached its contracts with Plaintiff and the Class by transitioning to remote education, and failing to provide the services and facilities to which the Mandatory Fee pertained after mid-March 2020;

      d.      Whether Defendant was unjustly enriched by retaining a portion of the tuition and Mandatory Fee during the period of time Barnard was closed, and Plaintiff and the members of the Class were denied an in-person and on-campus educational experience and access and the services and facilities for which the Mandatory Fee was paid; and

      e.      The amount of damages and other relief to be awarded to Plaintiff and the Class members.

57. **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that Barnard stopped providing in mid-March 2020.

58. **Adequacy:** Plaintiff is an adequate class representative because her interests do not conflict with the interests of the other Class members who she seeks to represent; Plaintiff has retained competent counsel who are experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

59. **Predominance:** Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example,

Defendant's liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendant breached its contracts to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

60. **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class Members is relatively small compared to the burden and expense that would be required to individually litigate their claims against Barnard, making it impracticable for Class Members to individually seek redress for Barnard's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individual litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

61. **Ascertainability:** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class Members may be readily identified through Defendant's books and records.

**FIRST CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

62. Plaintiff repeats and realleges the preceding factual allegations set forth above, as if fully alleged herein.

63. Plaintiff brings this claim individually and on behalf of the members of the Class.

64. By paying Barnard tuition and the Mandatory Fee for the Spring 2020 semester, Barnard agreed to, among other things, provide an in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee they paid pertained throughout the Spring 2020 semester. As a result, Plaintiff and each member of the Class entered into implied contracts with Barnard.

65. When entering into implied contracts, Plaintiff and Class members reasonably believed and expected that Barnard would provide them with an on-campus and in-person educational experience, as opposed to remote learning, and use of Defendant's facilities and services for the duration of the entire Spring 2020 semester as mutually agreed and intended in accordance with Defendant's publications, including but not limited to, its marketing materials, course catalogues, and other bulletins.

66. Plaintiff and Class members fully performed their obligations under their implied contracts with Bernard by registering for classes and paying tuition and the Mandatory Fee.

67. Defendant is in possession of all contracts, materials, circulars, advertisements and the like between Plaintiff and members of the Class on one hand, and Barnard on the other.

68. Barnard breached its implied contracts with Plaintiff and the Class by failing to provide the promised in-person and on-campus educational experience as well as the services and facilities to which the Mandatory Fee pertained throughout the Spring 2020 semester, yet has retained monies paid by Plaintiff and the Class for an on campus and in-person educational experience and access to these services and facilities during the entire Spring 2020 semester. Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

69. Plaintiff and the members of the Class have suffered damages as a direct and proximate result of Barnard's breach in the amount of the prorated portion of the tuition and

Mandatory Fee they each paid equal to the reduction in contracted for education and services during the portion of time the Spring 2020 semester when in-person classes were discontinued and facilities were closed by Barnard.

70. Barnard should return such portions of the tuition and Mandatory Fee to Plaintiff and each Class Member.

### SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

71. Plaintiff repeats and realleges the paragraphs 1 through 61 set forth above, as if fully alleged herein.

72. Plaintiff brings this claim individually and on behalf of the members of the Class in the alternative to the First Claim for Relief.

73. Plaintiff and members of the Class conferred a benefit on Barnard in the form of tuition and the Mandatory Fee paid for the Spring 2020 semester. The payment of this tuition and Mandatory Fee was to be in exchange for an in-person, on-campus educational experience to be provided to Plaintiff and the members of the Class throughout the Spring 2020 semester.

74. Barnard knowing accepted the benefits conferred upon it by Plaintiff and Class members.

75. Barnard has retained the full benefit of the tuition and Mandatory Fee payments by Plaintiff and the members of the Class for the Spring 2020 semester—without providing the benefits that Plaintiff and Class members are owed.

76. For example, Barnard failed to provide Plaintiff and Class Members access to many on-campus facilities and services after March 11, 2020, yet Barnard assessed Plaintiff and Class

Members with tuition and fees that covered the cost of upkeep and maintenance of such facilities and services.

77. Plaintiff and Class members were not able to access such facilities or services remotely after March 11, 2020.

78. Plaintiff and Class members also paid tuition and fees with the understanding that such costs included the in-person classes, services, opportunities, and experiences that Barnard had previously marked, promoted, and/or made available prior to March 11, 2020.

79. Plaintiff and Class members were not provided an in-person education experience after March 11, 2020, and were instead provide with remote instruction only.

80. Barnard has been unjustly enriched by Plaintiff's and Class members' payment of tuition and the Mandatory Fee.

81. Despite not being able to provide an in-person educational experience and access to the services and facilities Plaintiff's and Class members' paid tuition and the Mandatory Fee for, Barnard has retained the full benefit of the tuition and the Mandatory Fee paid by Plaintiff and Class Members.

82. Allowing Barnard to retain the tuition and Mandatory Fee paid for in-person on campus education and experiences, after reducing the benefit provided and the costs incurred by Barnard, unjustly enriches the Defendant.

83. Accordingly, Barnard has been unjustly enriched and should return the prorated portion of the tuition and Mandatory Fee that Plaintiff and Class members each paid equal to the reduction in benefit for education and services during the remainder of the Spring 2020 semester when in-person classes were discontinued and facilities were closed by Barnard.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief as follows:

a. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

b. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

c. For compensatory damages in an amount to be determined by the trier of fact;

d. For an order of restitution and all other forms of equitable monetary relief;

e. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

f. Awarding pre- and post-judgment interest on any amounts awarded; and

g. Awarding such other and further relief as may be just and proper.

## DEMAND FOR TRIAL BY JURY

A jury trial is demanded on all claims so triable.

Dated May 5, 2023               Respectfully submitted,

*/s/ Gary F. Lynch*
Gary F. Lynch
Jamisen A. Etzel*
Nicholas A. Colella*
LYNCH CARPENTER LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
gary@lcllp.com
jamisen@lcllp.com

nickc@lcllp.com

*Counsel for Plaintiff*
\**pro hac vice* forthcoming