UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JULIA COCCARO, on behalf of herself and all others similarly situated,

        Plaintiff,

-v-

BARNARD COLLEGE,

        Defendant.

23-CV-3809 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

  Plaintiff Julia Coccaro brings this putative class action against Defendant Barnard College ("Barnard") for breach of implied contract and unjust enrichment based on the closing of Barnard's campus during the COVID-19 pandemic. Presently before the Court is Barnard's motion for judgment on the pleadings, under Federal Rule of Civil Procedure 12(c), for failure to state a claim. For the reasons that follow, Barnard's motion is denied.

**I. Background**

  **A. Factual Background**

  The following facts, drawn from the complaint, are presumed true for the purposes of resolving Barnard's Rule 12(c) motion. Barnard is a private liberal arts college which has its principal campus located in Manhattan. (ECF No. 1 ("Compl.") ¶ 17.) Coccaro was a student enrolled at Barnard during the Spring 2020 semester, for which she paid tuition and fees. (*Id.* ¶ 15.) The spring semester was scheduled to run from approximately January 21, 2020, through May 14, 2020. (*Id.* ¶ 16.) However, due to the COVID-19 pandemic, after March 11, 2020, "Barnard closed the campus and cut off access to on-campus services, facilities, and extracurricular activities." (*Id.*)

Prior to Spring 2020, Coccaro alleges, "Barnard offer[ed] students an in-person and on-campus education, using its marketing materials, course catalogue, and other bulletins to solicit students for its on-campus programs." (Compl. ¶ 23.) Specifically, Coccaro alleges that Barnard's website "describes Barnard's on-campus services and facilities and the benefits of personal contacts with faculty and staff." (*Id.* ¶ 24.) Barnard's catalogue also "highlights additional benefits of attending Barnard for an in-person education," including its new facilities that serve to, for example, "convene students and faculty," "facilitate collaboration," and create "a dynamic academic hub of the campus, linking departments and disciplines both physically and philosophically." (*Id.* ¶ 26.) In addition, Coccaro alleges, "Barnard touts its location in New York City as part of its academic experience." (*Id.* ¶ 30.) For example, on its website, Barnard states that it provides "[o]ff-campus, hands-on academic experiences right in the heart of New York City." (*Id.*)

Tuition at Barnard for the Spring 2020 semester was approximately $27,890.50. (*Id.* ¶ 22.) Students were also required to pay a "mandatory fee" of $943.50 for the Spring 2020 semester. (*Id.* ¶ 35.) According to Barnard's 2019-2020 Tuition and Fees Bulletin, the mandatory fee includes the Student Health Service Fee, Class Fee, Computer Fee, Student Government Charges, access to the facilities at the Dodge Physical Fitness Center, and access to the facilities at Lerner Hall at Columbia University. (*Id.* ¶ 36.)

On March 11, 2020, Barnard suspended in-person classes for the rest of the semester and moved all of its classes online. (*Id.* ¶ 39.) Barnard also canceled all events and gatherings for the remainder of the semester and placed limits on services and accessibility on campus. (*Id.* ¶ 40.) In addition, Barnard requested that students move out of the residence halls. (*Id.* ¶ 41.). The services which the mandatory fee covered were also "terminated, cancelled, or severely

curtailed at or about this time, such as access to the health and wellness facilities, programs or services; fitness facilities; student events or sports; and an in-person commencement." (*Id.* ¶ 44.) Coccaro alleges that "[a]lthough Barnard provided prorated refunds for residence hall rooms and student meal plans, Barnard did not provide reimbursement or refund information regarding tuition or the Mandatory Fee." (*Id.* ¶ 45.) Coccaro alleges that "Barnard has refused to refund any portion of the tuition or the Mandatory Fee, despite not providing the on-campus education, services, facilities, and activities, a completely different product from which they paid, contracted for, and reasonably expected to receive." (*Id.* ¶ 48.)

### B. Procedural History

Coccaro commenced this action on May 5, 2023. (*See* Compl.) Barnard filed an answer and a "motion to dismiss" pursuant to Rule 12(c) on August 4, 2023. (*See* ECF Nos. 17, 18.) Coccaro filed her opposition to the motion on August 25, 2023. (*See* ECF No. 27.) Barnard filed its reply in support of its motion on September 15, 2023. (*See* ECF No. 33.)

## II. Legal Standard

Under Rule 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed" but "early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (internal citations and quotation marks omitted). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

3

When evaluating whether a complaint meets these requirements, "the court must accept as true all well-pled factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor." *Doe v. Indyke*, 457 F. Supp. 3d 278, 282 (S.D.N.Y. 2020) (citing *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014)).

**III.    Discussion**

    **A.    Breach of Contract**

"Under New York law, upon enrolling in a university an implied contract is formed between the institution and the student." *Meng v. New Sch.*, No. 23-CV-3851 (JSR), 2023 WL 5162181, at *2 (S.D.N.Y. Aug. 11, 2023) (first citing *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011), and then citing *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 481 (S.D.N.Y. 2015)). The terms of the contract "are contained in the university's bulletins, circulars and regulations made available to the student." *Papelino*, 633 F.3d at 93 (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654, 511 N.Y.S.2d 880 (App. Div. 2d Dep't 1987)). "To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp v. Segui*, 19 F.3d 337, 348 (2d Cir. 1996)). Barnard offers several arguments as to why Coccaro has failed to adequately allege a breach of contract claim.

First, Barnard argues that Coccaro's tuition claim must be dismissed because Coccaro fails to identify any specific contractual promise of in-person instruction. (ECF No. 19 at 5.) In the Second Circuit's recent decision, *Rynasko v. New York University*, 63 F.4th 186 (2d Cir. 2023), the Second Circuit "framed the relevant inquiry [at the pleading stage as] whether 'a reasonable factfinder could conclude that [when the plaintiff] enrolled in the Spring 2020

4

semester, the parties mutually intended and implicitly agreed that the university would provide *generally in-person courses, activities, facilities, and services.*'" *Meng*, 2023 WL 5162181, at *2 (citing *Rynasko*, 63 F.4th at 198).

The Court concludes that the Complaint meets this standard. Coccaro alleges that "Barnard's website describes Barnard's on-campus services and facilities and the benefits of personal contacts with faculty and staff" and touts its campus life. (Compl. ¶ 24.) Barnard's course catalogue advertises the benefits of Barnard's "residential community." (*Id.* ¶ 25.) Barnard also advertises the benefits of using its new facilities. For example, Barnard describes its new "teaching and learning center" as a "a distinctive place that convenes students and faculty, facilitates collaboration, and fosters dialogue" and as "a dynamic academic hub of the campus, linking departments and disciplines both physically and philosophically." (*Id.* ¶ 26.) The building also includes a "new kind of library," which Barnard describes as "one that brings together current technologies and learning spaces in an interactive setting." (*Id.*) Barnard's website similarly "explains that the college's library 'seek[s] to bring together people, ideas, collections and technologies, forming a space and community that serves as a catalyst for knowledge creation and investigation by provid[ing] a wide range of research and scholarly services and programming to create a unique and connected undergraduate library." (*Id.* ¶ 27.) Coccaro also alleges that Barnard repeatedly advertises its location in New York City. Barnard's website states that Barnard provides "[o]ff-campus, hands-on academic experiences right in the heart of New York City," that Barnard is "[b]oldly NYC," and that "Barnard is one with the City—its nonstop energy, its diversity, its boundless imagination." (*Id.* ¶ 30.) Barnard's website also explains that New York City is a component of the educational curriculum, stating that "[a]t Barnard, New York City is our classroom. With one of the world's most diverse and culturally

5

rich urban environments at our doorstep, we use the city to highlight ideas and test our thinking in the real world. . . . Because Barnard classes are small and collaborative, it's easy for your professor to schedule a field trip or spontaneously head out to explore. By the end of your first year, you'll be fully immersed in the city you can now call home." (*Id.* ¶ 31.) Barnard's catalogue also states that "New York City and its vast cultural and social resources are also an extension of the Barnard campus, literally used by every department to enhance curriculum and learning." (*Id.* ¶ 32.)

While Barnard is correct that Coccaro has not "identif[ied] any specific promise of in-person instruction" (ECF No. 19 at 5), the foregoing allegations plausibly allege a mutual expectation that students would receive "generally in-person courses, activities, facilities, and services." *Rynasko*, 63 F.4th at 198. Judge Rakoff posed the following hypothetical in another case involving a student-plaintiff bringing breach of contract and unjust enrichment claims against a university that shifted to online classes during the COVID-19 pandemic. "The centrality of an in-person education to the underlying bargain is illustrated by the following counterfactual: imagine if [the university] had cancelled all in-person classes without the COVID-19 pandemic as a justification. If defendant's position were adopted, [the university] could have done so with impunity, and students would have been left utterly without recourse. This hypothetical exposes the weakness of [the university's] position that it never impliedly promised an in-person experience." *Meng*, 2023 WL 5162181, at *3.

Barnard raises three defenses. First, Barnard argues that Coccaro fails to cite any requirement in the Barnard's promotional materials that "instruction must be provided in a physical classroom setting — particularly during a pandemic and in contravention of government orders" and that "[i]t is hard to imagine a more compelling reason to modify the educational

6

program." (ECF No. 19 at 7.) This defense is unavailing at this stage. "As a general matter, the reason for a parties' breach of a contractual commitment has no bearing on the existence of that agreement in the first instance." *Meng*, 2023 WL 5162181, at *3. "In effect, [Barnard] asks the Court to find that an implicit force majeure clause exists in the contract." *Id.* New York law provides for an "impossibility defense" to address such a contention. *See id.* at *3 (citing *Sokoloff v. Nat'l City Bank of New York*, 208 A.D. 627, 630, 204 N.Y.S. 69 (App. Div. 1st Dep't 1924); *Rynasko*, 63 F.4th at 201 ("To the extent [the university] argues that its decision to suspend in-person operations during the Spring 2020 semester was reasonable, even necessary, under the unprecedented circumstances of the COVID-19 pandemic, New York law offers [the university] a potentially appropriate shield: the defense of impossibility or impracticability.").

While Barnard may ultimately prevail on the merits on its invocation of the impossibility defense, it is not resolvable on the pleadings. Evaluating an impossibility defense "requires an examination into the conduct of the party pleading the defense in order to determine the presence or absence of [] fault." *Lowenschuss v. Kane*, 520 F.2d 255, 265 (2d Cir. 1975). "In all but the clearest cases, . . . this will involve issues of fact" which are not subject to resolution on a motion to dismiss. *Lowenschuss*, 520 F.2d at 265-66. Moreover, because the "[t]he remedy for impossibility . . . is rescission of the contract," *Brittain v. Trustees of Columbia Univ. in the City of New York*, No. 20-CV-9194 (PKC), 2021 WL 3539664, at *9 (S.D.N.Y. Aug. 11, 2021) (citing *United States v. General Douglas McArthur Senior Village, Inc.*, 508 F.2d 377, 381 (2d Cir. 1974), Barnard's "impossibility defense would not relieve it of its obligation to return any portion of the tuition or fees plaintiff paid to which the university is not entitled," *Meng*, 2023 WL 5162181, at *5.

Second, Barnard contends that "[t]he law does not allow Plaintiff to retain the benefits after she ratified Barnard's conduct and then seek a refund" because "[a]llowing that would amount to a wholesale rewriting of the bargain and unjustly enrich [Coccaro] by allowing her to receive the education and credits for a reduced price after receiving the benefits from Barnard." (ECF No. 19 at 7.)  Waiver of a contractual right "should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection.  Generally, the existence of an intent to forgo such a right is a question of fact." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 7 N.Y.3d 96, 104, 850 N.E.2d 653, 658 (2006) (internal citations and quotation marks omitted).  Defendant has not pointed to a "clear manifestation" of Coccaro's intent to forgo such a right.  "The fact she received some benefit from the contract (i.e., credit towards her degree) does not establish[] she received the full value of the contract originally bargained for.  Given the factual nature of the waiver inquiry, the Court finds dismissal on this basis to be inappropriate at this stage." *Meng*, 2023 WL 5162181, at *6.

Third, Barnard argues that it included a disclaimer in its course catalogue.  (ECF No. 19 at 10.)  The presence of a disclaimer does not vitiate a student-plaintiff's implied contract claim against her university.  *Rynasko*, 63 F.4th at 200 ("the disclaimer must be understood as a single data point in the context of all the other factors shaping the contours of the implied contract between [a university] and its students").  "Even to the extent this disclaimer could be construed as granting the university the right to shift all coursework online, it does not do so unambiguously and so is not a basis to grant a motion to dismiss." *Meng*, 2023 WL 5162181, at *4 (citing *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 425 (S.D.N.Y. 2021).

Finally, Barnard advances an additional set of arguments as to why Coccaro should not be permitted to recover on her mandatory fee claim.  First, Barnard contends that Coccaro fails to

8

allege a specific promise linking the fees to services that would be in-person "in the face of a pandemic." (ECF No. 19 at 10.) For the reasons discussed above, this argument is unavailing at the present stage. Second, Barnard argues that the "flat per-semester fees that apply regardless of how much or how little a student uses a particular service or receives a particular benefit." (*Id.* at 11.) The Court finds this argument unpersuasive. As Coccaro notes, the issue is related to "access, not . . . actual use. Should [Coccaro] not access the library all semester, [but then] wish to access it starting in mid-March before midterm exams, she paid for the right to do so." (ECF No. 27 at 13.) Finally, Barnard argues that it "continued to provide student services, experiences and activities regardless of the pandemic," albeit online. (ECF No. 19 at 11.) For the same reasons explained above, this argument is unavailing at this stage, as Coccaro's claim is that she had entered into an implied contract with Barnard to provide in-person services, and more specifically, that the mandatory fee covered in-person services, which Barnard provided for only half of the Spring 2020 semester.

### B. Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege "that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 172 N.Y.S.3d 649, 658 (2022). Barnard argues that it is indisputable that Barnard closed its campus and shifted to online instruction in response to a "nationally declared pandemic and subsequent state–mandated shutdown of non-essential businesses" and that its conduct was not "tortious or fraudulent[,] and thus its retention of the tuition payments was not unjust." (ECF No. 19 at 12-13.) "In short," Barnard argues, Coccaro "has alleged no facts showing that 'equity and good conscience' require[] a refund of tuition or fees." (*Id.* at 13.) Here too, Barnard's argument is unavailing. The relevant inquiry is not whether Barnard was

9

justified in closing its campus and shifting to online instruction, but whether Barnard was justified in retaining the full amount of Coccaro's tuition and mandatory fee payment. *Meng*, 2023 WL 5162181, at *7. "[U]pon further development of the factual record, it may become apparent that [Barnard] did not benefit from any such savings or that it is otherwise equitable for [Barnard] to retain the funds that it did, but such a factual determination is inappropriate to resolve on a motion to dismiss." *Id.*; *see also Shaffer v. George Washington Univ.*, 27 F.4th 754, 769 (D.C. Cir. 2022) ("[D]etermining whether the transition to online learning resulted in a net enrichment to [the university] is a fact-intensive question inappropriate for resolution at the motion-to-dismiss stage.").

### IV. Conclusion

For the foregoing reasons, Barnard's Rule 12(c) motion for judgment on the pleadings is DENIED.

The Clerk of Court is directed to close the motion at ECF No. 18.

SO ORDERED.

Dated: January 18, 2024
New York, New York

_____
J. PAUL OETKEN
United States District Judge